## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DANIELLE ELISE GRANT,     )
             )
      Plaintiff,  )
             )
     v.      )   1:20cv897
             )
KILOLO KIJAKAZI,      )
Acting Commissioner of Social )
Security,[1]         )
             )
      Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Danielle Elise Grant, brought this action under the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. (Docket Entry 1.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 11, 13; see also Docket Entry 12 (Plaintiff's Memorandum); Docket Entry 14 (Defendant's Memorandum); Docket Entry 15 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1]  President Joseph R. Biden, Jr., appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi should be substituted for Andrew M. Saul as the defendant in this suit. By reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), neither the Court nor the parties need take any further action to continue this suit.

# I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB and SSI. (Tr. 294-300.) Upon denial of that application initially (Tr. 183-88) and on reconsideration (Tr. 192-200), she requested a hearing de novo before an Administrative Law Judge (the "ALJ") (see Tr. 201-17). Plaintiff and a vocational expert (a "VE") attended a hearing before an ALJ. (See Tr. 87-114.) Following reassignment of her matter to another ALJ, Plaintiff, her attorney, and a different VE attended a hearing before the new ALJ. (See Tr. 44-86.) That ALJ subsequently ruled Plaintiff not disabled under the Act. (Tr. 11-33.) The Appeals Council denied her request for review (Tr. 1-8), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2023.

2. [Plaintiff] has not engaged in substantial gainful activity since December 29, 2015, the alleged onset date.

. . . .

3. [Plaintiff] has the following severe impairments: degenerative disc disease, fibromyalgia, status/post thyroidectomy, bipolar disorder, generalized anxiety disorder, and major depressive disorder.

. . . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals

2

the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . . .

5.  . . . [Plaintiff] has the residual functional capacity [(at times, the "RFC")] to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). [Plaintiff] can only occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds. [Plaintiff] can frequently reach overhead bilaterally. [Plaintiff] must avoid concentrated exposure to extreme cold, excessive vibration, unprotected heights, and hazardous machinery. [Plaintiff] is limited to work with no production pace or production rate, meaning no work at a line or station, where the worker cannot control the speed of the work. [Plaintiff] must work in a low stress job, defined as having only occasional decision making and only occasional changes in work setting.

. . . .

6.  [Plaintiff] is unable to perform any past relevant work.

. . . .

7.  [Plaintiff] was born on March 10, 1968 and was 47 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date. [Plaintiff] subsequently changed age category to closely approaching advanced age.

8.  [Plaintiff] has at least a high school education and is able to communicate in English.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . . .

11.  [Plaintiff] has not been under a disability, as
defined in the . . . Act, from December 29, 2015, through
the date of this decision.

(Tr. 17-26 (bold font and parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits." Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope
of [the Court's] review of [such a] decision . . . is extremely
limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).
Plaintiff has not established entitlement to relief under this
extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead,
the Court "must uphold the factual findings of the ALJ [underlying
the denial of benefits] if they are supported by substantial
evidence and were reached through application of the correct legal
standard." Hines, 453 F.3d at 561 (brackets and internal quotation
marks omitted).  "Substantial evidence means 'such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir.
1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).
"It consists of more than a mere scintilla of evidence but may be

4

somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (brackets and internal quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [(the "SSA")] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process (the "SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' _i.e._, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2

---

[2] The "Act comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The [SSI] Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (citations omitted).

(4th Cir. 1999).[3]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.'  If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[4]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled.  See id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the

---

[3]  "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (citation omitted).

[4]  The "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (emphasis and internal quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  The "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

7

analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both . . . [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65.  If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  Hines, 453 F.3d at 567.[5]

## B.  Assignments of Error

Plaintiff asserts that the ALJ erred by (1) "failing to comply with the most basic standards of the Social Security Regulations for evaluating the severity of medical impairments and assessing residual functional capacity" (Docket Entry 12 at 2); (2) "improperly prohibit[ing Plaintiff] from submitting additional medical evidence to support her disability claim" (id.); and (3) "finding [Plaintiff] to retain the [RFC] to perform less than a full range of light work, but failing to specify which exertional strength requirements of light work she is capable of performing" (id.).  Defendant contends otherwise, maintaining "that substantial

---

[5]  A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant at step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

evidence supports [Defendant's] final decision and it should be affirmed."  (Docket Entry 14 at 18.)

### 1.  Impairment Assessment

In her first assignment of error, Plaintiff asserts that the ALJ improperly found that certain of her alleged ailments qualified as impairments.  (See Docket Entry 12 at 5-7, 11-12.)  Plaintiff first faults the ALJ for finding that degenerative disc disease qualified as a severe medically determinable impairment, on the theory that "there is nothing in any of [Plaintiff's] medical records to indicate that she was diagnosed with degenerative disc disease."  (Id. at 5-6; see also id. at 6 ("There are no x-ray or MRI reports indicating such and no treating physician has diagnosed such a condition.").)  According to Plaintiff, "[t]his is a violation of 20 CFR § 404.1529(b), which provides that the existence of a medical impairment must be shown by '[m]edical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques.'"  (Id. at 6 (final set of brackets in original).)  However, Plaintiff's chest x-ray on October 9, 2015, revealed "[m]ild degenerative changes [in the] thoracic spine."  (Tr. 568.)  This x-ray qualifies as a medically acceptable diagnostic technique, 20 CFR § 404.1502(c), satisfying the requirements of 20 CFR § 404.1529(b).

Moreover, even if the ALJ had erred in finding that Plaintiff's alleged degenerative disc disease qualified as a severe

medically determinable impairment, such error would be harmless. "The federal 'harmless-error' statute, now codified at 28 U.S.C. § 2111, tells courts to review cases for errors of law 'without regard to errors' that do not affect the parties' 'substantial rights.'" <u>Shinseki v. Sanders</u>, 556 U.S. 396, 407 (2009). In addition, the United States Supreme "Court has said that the party that seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted." <u>Id.</u> at 409 (internal quotation marks omitted). "[C]ourts have correlated review of ordinary administrative proceedings to appellate review of civil cases in this respect. Consequently, the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." <u>Id.</u> (citing with approval, <u>inter alia</u>, <u>Nelson v. Apfel</u>, 131 F.3d 1228, 1236 (7th Cir. 1997), a Social Security disability case).[6] "Here, Plaintiff makes no showing of <u>any</u> prejudice, much less 'substantial prejudice,'" <u>Brandy K. v. Commissioner of Soc. Sec.</u>, No. 1:20-cv-694, 2022 WL 179541, at *6 (S.D. Ohio Jan. 20, 2022) (emphasis in original), arising from the ALJ's determination that she suffered from the severe impairment of degenerative disc disease (<u>see</u> Docket Entry 12 at 5-6; Docket Entry 15 at 5-7).

---

[6] Consistent with <u>Sanders</u>, the United States Court of Appeals for the Fourth Circuit has repeatedly recognized the applicability of the harmless error doctrine in the Social Security disability context. <u>See</u> <u>Mascio v. Colvin</u>, 780 F.3d 632, 636-37, 639 (4th Cir. 2015); <u>Garner v. Astrue</u>, 436 F. App'x 224, 226 n.* (4th Cir. 2011); <u>Morgan v. Barnhart</u>, 142 F. App'x 716, 723-25 (4th Cir. 2005); <u>Camp v. Massanari</u>, 22 F. App'x 311, 311 (4th Cir. 2001).

Accordingly, even if medically acceptable diagnostic techniques did not support the ALJ's degenerative disc disease finding, such circumstance would afford Plaintiff no relief.

In Plaintiff's Memorandum, Plaintiff also contended that the ALJ "had no basis to find that fibromyalgia is a severe medically determinable impairment." (Docket Entry 12 at 7; see also id. at 6.) In Plaintiff's Reply, however, Plaintiff "concedes that the ALJ correctly found fibromyalgia to be a severe medically determinable impairment[ and] withdraw[s her] argument on this point." (Docket Entry 15 at 2; see also id. at 1.) Plaintiff then attempts to assert a new argument based on the existence of fibromyalgia. (See, e.g., id. at 2 ("If Defendant is correct that fibromyalgia is medically determinable, then an unaddressed issue is raised: is [Plaintiff] is [sic] entitled to rely on her subjective testimony to prove the alleged severity of her fibromyalgia symptoms?").) Parties cannot advance new arguments for the first time in a reply brief. See, e.g., United States v. Williams, 445 F.3d 724, 736 n.6 (4th Cir. 2006) (declining to consider argument raised for the first time in reply brief and observing that "this argument comes far too late in the day"); Hunt v. Nuth, 57 F.3d 1327, 1338 (4th Cir. 1995) (explaining that "courts generally will not address new arguments raised in a reply brief because it would be unfair to the [other party] and would risk an improvident or ill-advised opinion on the legal issues

11

raised"); Thompkins v. Key Health Med. Sols., Inc., No. 1:12cv613, 2015 WL 1292228, at *7 (M.D.N.C. Mar. 23, 2015) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." (internal quotation marks omitted)), report and recommendation adopted, No. 1:12cv613, 2015 WL 3902340 (M.D.N.C. June 24, 2015); Triad Int'l Maint. Corp. v. Aim Aviation, Inc., 473 F. Supp.2d 666, 670 n.1 (M.D.N.C. 2006) ("Reply briefs . . . may not inject new grounds. . . .[, and an] argument [that] was not contained in the main brief . . . is not before the Court.").

Even if considered, Plaintiff's argument would fail. Plaintiff appears to suggest that the ALJ erred by considering factors other than Plaintiff's subjective statements in assessing the effects of her fibromyalgia. (Docket Entry 15 at 2-5 (relying on Arakas v. Commissioner, Soc. Sec. Admin., 983 F.3d 83 (4th Cir. 2020), and Hines, 453 F.3d 559).) However, ALJs may appropriately "consider a variety of factors . . . in evaluating the intensity, persistence, and limiting effects of symptoms." Patterson v. Kijakazi, No. 1:20cv1030, 2022 WL 103884, at *6 (M.D.N.C. Jan. 10, 2022) (analyzing Arakas, Hines, and Craig, and explaining that, "under the appropriate circumstances, an ALJ may choose to rely exclusively on a claimant's subjective symptom reports to find disabling symptoms; however, Arakas does not compel ALJs to consider only subjective evidence, as such a requirement would

conflict with the regulations, which plainly require ALJs to consider a variety of factors" (emphasis in original)). Thus, even if considered, Plaintiff's contention that this matter should "be remanded for the ALJ to apply the standards of *Arakas* and *Hines*" (Docket Entry 15 at 5) would not justify relief.

Plaintiff further faults the ALJ's evaluation of Plaintiff's carpal tunnel syndrome. (Docket Entry 12 at 7-9.) She first argues that, because the physical "report containing the results of [her] July 2017 EMG test is not contained in [her] records from Salem Neurological Center," the ALJ erred in finding that "the July 2017 'nerve conduction study' showed only mild results related to carpal tunnel syndrome." (Id. at 8.) The evidence before the ALJ included the records from Plaintiff's July 26, 2017, appointment with Salem Neurological Center (see Tr. 656), which indicate that an "EMG [was] ordered and performed today and results discussed in detail with [Plaintiff]" (Tr. 658). The findings from that July 26, 2017, assessment include "[m]edian mononeuropathy consistent with carpal tunnel syndrome: [m]ild bilaterally," as to which the doctor (Dr. Runheim) "[r]ecommend[ed] wrist splinting." (Tr. 658.) The ALJ explicitly cited this record in support of his finding that "a nerve conduction study revealed only mild results." (Tr. 17 (citing Ex. 19F, p. 4).) Moreover, even if the ALJ erred in relying upon Dr. Runheim's description of the results of Plaintiff's evaluation, such error would qualify as harmless, as

13

Plaintiff has shown no prejudice, let alone substantial prejudice, from the ALJ's reliance on Dr. Runheim's records. (See Docket Entry 12 at 7-9; see also, e.g., id. at 15-16 (arguing that ALJ and Appeals Council erred in not admitting 2019 nerve conduction/EMG testing that revealed similar results as July 2017 test, on theory that such 2019 report provided allegedly missing objective evidence of carpal tunnel syndrome).)

Plaintiff additionally contends that, under Social Security Ruling 85-28, Titles II and XVI: Medical Impairments that are Not Severe, 1985 WL 56856 (Jan. 1, 1985) ("SSR 85-28"), the ALJ erred by considering Plaintiff's function report in evaluating her carpal tunnel syndrome at step two of the SEP. (See id. at 8-9.) According to Plaintiff, "SSR 85-28 provides that only medical evidence is used to make a step two evaluation of whether a medical impairment is severe." (Id. at 8.)[7] However, although a claimant

---

[7] More specifically, SSR 85-28 provides:

>     Inherent in a finding of a medically not severe impairment or combination of impairments is the conclusion that the individual's ability to engage in [substantial gainful activity ("SGA")] is not seriously affected. Before this conclusion can be reached, however, an evaluation of the effects of the impairment(s) on the person's ability to do basic work activities must be made. A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities. If this assessment shows the individual to have the physical and mental ability(ies) necessary to perform such activities, no evaluation of past work (or of age, education, work experience) is needed. Rather, it is reasonable to conclude, based
>                                                       (continued...)

must have objective medical evidence to survive step two, <u>see,</u> <u>e.g.,</u> 20 C.F.R. §§ 404.1508; 416.908, ALJs may consider additional evidence, including "an individual's <u>symptoms</u> and <u>functional</u> <u>limitations</u>[,] to determine whether his or her impairment(s) is severe" <u>if</u>, as with Plaintiff's carpal tunnel syndrome, "the objective medical evidence alone" does not "establish[] a severe medically determinable impairment," Social Security Ruling 16-3p, <u>Titles II & XVI: Evaluation of Symptoms in Disability Claims</u>, 2017 WL 5180304, at *11 (Oct. 25, 2017) ("SSR 16-3p") (emphasis added). Part of that determination involves assessment of the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), which include consideration of a claimant's ability to engage in daily activities, <u>see</u> SSR 16-3p, 2017 WL 5180304, at *7-8. As one court explained it:

> [Plaintiff] has interpreted th[e] language [of SSR 85-28] too narrowly. Read in context, it appears that[,] in SSR 85-28, the [SSA] was clarifying that a person can be found not disabled at [s]tep [t]wo based solely on their medical impairments without considering the claimant's age, education, or past work. [SSR 85-28, 1985 WL 56856, at *4.] While [s]tep [t]wo is limited solely to evaluating a person's medically determinable impairments, it is not limited strictly to objective medical evidence.

<u>Pardo v. Colvin</u>, No. CV-14-2307, 2016 WL 703179, at *2 (D. Ariz. Feb. 2, 2016), <u>recommendation adopted</u>, 2016 WL 695830 (D. Ariz.

---

[7] (...continued)
    on the minimal impact of the impairment(s), that the individual is capable of engaging in SGA.

SSR 85-28, 1985 WL 56856, at *4.

Feb. 22, 2016). Thus, the ALJ properly considered Plaintiff's function report in assessing the severity of Plaintiff's carpal tunnel syndrome at step two.[8]

Plaintiff next asserts that the ALJ "failed to discuss the impact of bilateral carpal tunnel syndrome on [Plaintiff's] RFC." (Docket Entry 12 at 10.) In particular, Plaintiff maintains that "the ALJ failed to explain how the upper extremity weakness and reduced sensation impacts [Plaintiff's] ability to engage in handling and fingering." (Id. at 11.)

The ALJ recognized that Plaintiff "has reported both neck and shoulder pain" and that "there has been mild to moderate distal, more than proximal, weakness in the upper and lower extremities. Sensory examinations have also noted reduced sensation to light

_____

[8] Plaintiff alleges, without further development, that "none of the reasons offered by [the] ALJ at step two support a finding that [Plaintiff's] carpal tunnel syndrome is non-severe." (Docket Entry 12 at 9.) In finding that Plaintiff's carpal tunnel did not qualify as severe at step two, the ALJ stated:

> [T]here is some suggestion of carpal tunnel syndrome in the record. However, a nerve conduction study revealed only mild results (Exhibit 19F, p. 4). [Plaintiff] did not allege issues with personal care chores (Exhibit 3E, p. 2). She also noted hobbies and household chores that do not suggest any issues gripping or handling and fingering (Exhibit 3E).

(Tr. 17.) These findings, including medical records indicating only mild carpal tunnel syndrome and Plaintiff's representation on her function report that she (1) had "**NO PROBLEM** with personal care" (Tr. 360 (emphasis in original)), (2) engaged in dusting, sweeping, washing dishes, and laundry (Tr. 361), (3) does "[e]verything" for her daughter, including cooking, cleaning, and shopping, without assistance from anyone (Tr. 360), and (4) included "writing" among her hobbies (Tr. 363) provide substantial evidence for the ALJ's determination that Plaintiff's carpal tunnel syndrome qualifies as non-severe. See, e.g., Biestek v. Berryhill, __ U.S. __, __, 139 S. Ct. 1148, 1154 (2019) (explaining that "[substantial evidence] means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (internal quotation marks omitted)).

touch, vibration, joint position sense, and pinprick in a stocking glove distribution." (Tr. 22.) The ALJ noted, however, that Plaintiff "has had normal movement of all her extremities" with normal motor examinations. (Tr. 22.) Further, the ALJ explained,

> a nerve conduction study revealed only mild results (Exhibit 19F, p. 4). Moreover, [Plaintiff] did not allege issues with personal care chores in her function report (Exhibit 3E, p. 2). She also noted hobbies and household chores that do not suggest any issues gripping, handling, or fingering (Exhibit 3E). Specifically, [Plaintiff] has reported cooking simple meals, handling laundry, sweeping, dishes, and dusting (Exhibit 3E). [Plaintiff's] gait has been unremarkable. Further, treatment, including medication, steroid injections, and trigger point injections, has reportedly offered relief (Exhibit 22F, p. 9, 47). [Plaintiff] also worked throughout 2018 (Hearing Testimony). In fact, she was working 30 hours per week in 2018.

(Tr. 22.) Thus, contrary to Plaintiff's contentions, the ALJ sufficiently explained his determination that Plaintiff's mild carpal tunnel syndrome necessitated no handling or fingering RFC limitations.

As a final argument in support of her first assignment of error, Plaintiff criticizes the ALJ's consideration of Plaintiff's diagnosis of cervical and lumbosacral radiculopathy. (Docket Entry 12 at 11-12.) According to Plaintiff, the ALJ erred in relying on her diagnoses without "determin[ing] if there is sufficient objective medical evidence to establish that [Plaintiff's] cervical and lumbosacral radiculopathy are medically determinable" (id. at 12). (See id. at 11 (explaining that ALJ "stat[ed] that

17

[Plaintiff's] 'diagnoses include cervical and lumbosacral radiculopathy'" (quoting Tr. 22).)[9]

As support for Plaintiff's cervical and lumbosacral radiculopathy, the ALJ cited to the Salem Neurological records from July 26, 2017 (see Tr. 22 (citing "Exhibit 19F, p. 4"), which assesses Plaintiff as suffering from "[c]ervical radiculopathy" and "[l]umbosacral radiculopathy" and identifies as the "[p]lan" for her "[l]umbosacral/cervical radiculopathy" an increase in certain medication (Tr. 658). To the extent the ALJ erred in accepting this record as evidence that Plaintiff suffers from cervical and lumbosacral radiculopathy, such error remains harmless. As with her previous challenges, Plaintiff does not assert, let alone establish, that she suffered any prejudice from the ALJ's determination that she possessed these impairments. (See Docket Entry 12 at 11-12; Docket Entry 15 at 5-7.)

Thus, Plaintiff's first assignment of error fails to justify relief.

---

[9] More specifically, the ALJ stated:

> Turning to her pain related complaints, [Plaintiff] has reported both neck and shoulder pain (Exhibit 19F, p. 1; Exhibit 22F, p. 1, 5, 25-49). [Plaintiff's] diagnoses include cervical and lumbosacral radiculopathy (Exhibit 19F, p. 4). Yet, [Plaintiff] has had normal movement of all her extremities (Exhibit 22F, p. 2-3, 6-7, 24-49). . . . .

(Tr. 22.)

## 2. Excluded Evidence

In her next assignment of error, Plaintiff contends that the ALJ "improperly prohibited [Plaintiff] from submitting additional medical evidence to support her disability claim." (Docket Entry 12 at 12 (bold font omitted).) Specifically, Plaintiff challenges the exclusion of "additional medical evidence from Salem Neurological Center." (Id. at 14.) According to Plaintiff, because, more than five days prior to the hearing, she indicated on the "Claimant's Recent Medical Treatment" form (Tr. 433 (all-cap font omitted)) "that she was receiving continuous medical treatment from Salem Neurological 'every 6 to 8 wks'" (Docket Entry 12 at 13 (quoting Tr. 433)), the ALJ "did not have discretion to refuse to admit additional medical evidence from Salem Neurological Center" (id. at 13-14). In turn, Defendant asserts that "Plaintiff failed to comply with the five-day rule." (Docket Entry 14 at 17.) Defendant's position possesses merit.

As a preliminary matter, Plaintiff has identified no evidence in the record suggesting that she attempted to submit the disputed materials from Salem Neurological Center to the ALJ. (See Docket Entry 12 at 12-16; Docket Entry 15 at 12-15.) At the hearing, when asked if she knew "of any additional relevant evidence that [the SSA] do[es]n't currently have," Plaintiff's attorney stated that she was "not sure of this. [She] did submit a memo," but due to technical difficulties, she attempted to submit the memo at a UPS

19

store the day before the hearing, and she was "not sure that [the memo had] actually made it to the file yet." (Tr. 47-48; see also Tr. 48 (explaining that, due to technical difficulties, Plaintiff's attorney "can't view whatever is in [Plaintiff's] account").) When the ALJ observed that "even memos" remain "subject to [the SSA's] 5-day rule" and asked whether Plaintiff's attorney "submit[ted] it in time," Plaintiff's attorney conceded that she "actually had not," but indicated that she had attempted to submit a letter the week before the hearing "asking leave to submit evidence beyond the five days, [but she was] not sure if [the ALJ] received that letter." (Tr. 48.) The ALJ indicated that he did not see such letter in the record. (Tr. 48.)

Plaintiff's attorney then explained that she mentioned the memo in that letter, as "[she] knew [that she] was going to be meeting with [Plaintiff] this past Monday, and [she] wanted to make sure that [she] included, in [her] memo, any discussions that [they] had on that Monday." (Tr. 48.) The ALJ responded that he "ha[d] two documents from [Plaintiff's attorney]. One's dated the 15th, one's dated the 18th. What additional records would [Plaintiff's attorney] — are [they] only talking about a memo?" (Tr. 49.)[10] Plaintiff's attorney agreed that, "[y]es, Your Honor, [they] are," and the ALJ said that he "[wi]ll be glad to receive [Plaintiff's] brief, but neither of the[] documents [he possessed]

---

[10] The hearing occurred on November 22, 2019. (See Tr. 45.)

is that," so he directed Plaintiff's attorney to submit her brief after the hearing.  (Tr. 49.)

Although neither Plaintiff nor her attorney discussed any additional missing material at the hearing (see Tr. 45-86), the ALJ's opinion states:

> [Plaintiff] submitted or informed the [ALJ] about additional written evidence less than five business days before the scheduled hearing date.  The [ALJ] declines to admit this evidence because the requirements of 20 CFR 404.935(b) and 416.1435(b) are not met.  [Plaintiff's] representative filed a brief and correspondence regarding additional evidence, both just prior to the hearing, and after the hearing.  During the hearing, [Plaintiff's] representative acknowledged that she was unsure if the record was complete.  [Plaintiff's] representative further stated that she had computer issues.  However, even assuming [Plaintiff's] representative had a working computer the day she attempted to file her brief, such a brief and any other correspondence would still have been untimely.  No valid reason was offered regarding any of the untimely filings.  As such, the [ALJ] declines to admit the evidence.

(Tr. 14-15 (extraneous space omitted).)  The ALJ does not further identify the written evidence that Plaintiff attempted to submit.  (See Tr. 14-15.)  Thus, the identity of the excluded material remains unclear.

Regardless, the ALJ did not err in excluding the disputed materials from Salem Neurological Center.  SSA regulations oblige claimants and their attorneys to "make every effort to ensure that the [ALJ] receives all of the evidence and must inform [the SSA] about or submit any written evidence, as required in § 404.1512 [and § 416.912], no later than 5 business days before the date of

21

the scheduled hearing." 20 C.F.R. § 404.935(a); accord 20 C.F.R. § 416.1435(a). If the claimant fails to "comply with this requirement, the [ALJ] may decline to consider or obtain the evidence, unless the circumstances described in paragraph (b) of th[e S]ection apply." 20 C.F.R. § 404.935(a); accord 20 C.F.R. § 416.1435(a).[11] Notably,

> [t]o satisfy the claimant's obligation under the regulations to "inform" [the SSA] about written evidence, he or she must provide information specific enough to identify the evidence (source, location, and dates of treatment) and show that the evidence relates to the individual's medical condition, work activity, job history, medical treatment, or other issues relevant to whether or not the individual is disabled or blind. If the individual does not provide [the SSA] with information specific enough to allow [the SSA] to identify the written evidence and understand how it relates to whether or not the individual is disabled or blind, the individual has not informed [the SSA] about evidence within the meaning of 20 CFR 404.935, 404.1512, 416.912 or 416.1435, and [the SSA] will not request that evidence.

Social Security Ruling, SSR 17-4p; Titles II & XVI: Responsibility for Developing Written Evidence, 2017 WL 4736894, at *3 (Oct. 4, 2017) (emphasis added) ("SSR 17-4p").

On the recent medical treatment form, Plaintiff indicated that, since January 10, 2017, she had received treatment from four sources, including "Salem Neurological Dr. A. Run[h]eim MD." (Tr. 433.) She provided a telephone number and address for this provider and, as for the "dates of treatment or examination," she

---

[11] Plaintiff does not contend that she satisfied any of the circumstances in 20 C.F.R. §§ 404.935(b), 416.1435(b). (See Docket Entry 12 at 12-16; Docket Entry 15 at 12-15.)

indicated "every 6 to 8 wks" [sic].  (Tr. 433 (italics omitted).)

In response to the form's second question, "[w]hat have these

doctors told you about your condition," Plaintiff replied simply

"All," without further elaboration anywhere in the form regarding

the relevance of any of the specified providers' evaluations or

treatments to Plaintiff's condition.  (Tr. 433.)  At a minimum,

therefore, Plaintiff failed to provide the SSA "with information

specific enough to allow [the SSA] to . . . understand how [any

Salem Neurological evidence since January 2017] relates to whether

or not [Plaintiff] is disabled."  SSR 17-4p, 2017 WL 4736894, at

*3.  Accordingly, Plaintiff did not inform the ALJ (or the SSA)

about the disputed Salem Neurological evidence in compliance with

the 5-day rule.  Id.  The ALJ thus did not err in excluding the

disputed evidence.

Plaintiff additionally asserts that the Appeals Council erred

in excluding the disputed Salem Neurological records.  (See Docket

Entry 12 at 14-16.)  In this regard, the Appeals Council stated:

"You submitted treatment records from Salem Neurological Center

dated May 30, 2019 through November 14, 2019 (10 pages).  We find

this evidence does not show a reasonable probability that it would

change the outcome of the decision.  We did not exhibit this

evidence."  (Tr. 2.)  These treatment records contain the results

of an EMG study on May 30, 2019, and doctors' appointments on
October 3, 2019, and November 14, 2019. (Tr. 34-43.)[12]

As relevant here, SSA regulations provide that:

(a) The Appeals Council will review a case . . . if —

. . . .

(5) Subject to paragraph (b) of this section, the
Appeals Council receives additional evidence that
is new, material, and relates to the period on or
before the date of the hearing decision, and there
is a <u>reasonable probability that the additional
evidence would change the outcome of the decision</u>.

(b) The Appeals Council will only consider additional
evidence under paragraph (a)(5) of this section if [the
claimant] show[s] good cause for not informing [the SSA]
about or submitting the evidence [no later than five
business days before the date of the scheduled ALJ
hearing] as described in § 404.935 because:

(1) [The SSA's] action misled [the claimant];

(2) [The claimant] had a physical, mental,
educational, or linguistic limitation(s) that
prevented [him or her] from informing [the
SSA] about or submitting the evidence earlier;
or

(3) Some other unusual, unexpected, or
unavoidable circumstance beyond [the
claimant's] control prevented [the claimant]
from informing [the SSA] about or submitting
the evidence earlier. Examples include, but
are not limited to:

(i) [The claimant] w[as] seriously
ill, and [his or her] illness
prevented [him or her] from
contacting [the SSA] in person, in
writing, or through a friend,
relative, or other person;

---

[12] The records thus predate the hearing before the ALJ. (<u>See</u> Tr. 45.)

24

> (ii) There was a death or serious
> illness in [the claimant's]
> immediate family;
>
> (iii) Important records were
> destroyed or damaged by fire or
> other accidental cause;
>
> (iv) [The claimant] actively and
> diligently sought evidence from a
> source and the evidence was not
> received or was received less than 5
> business days prior to the hearing;
> or
>
> (v) [The claimant] received a
> hearing level decision on the record
> and the Appeals Council reviewed
> [the claimant's] decision.

20 C.F.R. § 404.970 (emphasis added); accord 20 C.F.R. § 416.1470.[13]

Here, the parties dispute solely whether the contested evidence satisfies the reasonable probability requirement. (See Docket Entry 14 at 17-18.)[14] Notably, Plaintiff does not address

---

[13] Evidence submitted to the Appeals Council qualifies as

- "new if it is not part of the [administrative record] as of the date of the [ALJ's] decision";

- "material if it is relevant, i.e., involves or is directly related to issues adjudicated by the ALJ"; and

- "relate[d] to the period on or before the date of the hearing decision if the evidence is dated on or before the date of the hearing decision, or . . . post-dates the hearing decision but is reasonably related to the time period adjudicated in the hearing decision."

Hearings, Appeals, and Litigation Law Manual, § I-3-3-6B.2 ("Additional Evidence") (May 1, 2017), https://www.ssa.gov/OP_Home/hallex/I-03/I-3-3-6.html (last visited Feb. 24, 2022).

[14] Although unnecessary to resolution of this matter, it bears noting that Plaintiff has never contended that she satisfies the "good cause" requirement for Appeals Council consideration of new evidence. (See, e.g., Docket Entry 12 at 14-16; Tr. 438-39 (addressing only "new" and "material" arguments in brief to
(continued...)

25

the "reasonable probability" requirement directly, even after Defendant explicitly urged affirmation on that basis (see id.). (See Docket Entry 12 at 14-16; Docket Entry 15 at 12-15 (confining arguments solely to propriety of ALJ's actions).) Instead, Plaintiff asserts that "[e]vidence is material if there is a reasonable probability that the additional evidence would change the outcome of the decision." (Docket Entry 12 at 14.)[15] Plaintiff then maintains:

> The additional evidence submitted to the Appeals Council is material to [the ALJ's] hearing decision because the results of the 2019 nerve conduction/EMG testing provide objective medical evidence documenting physiological nervous system abnormalities shown be [sic] medically acceptable clinical and laboratory diagnostic techniques that the require [sic] to establish that [Plaintiff's] bilateral carpal tunnel syndrome, lumbosacral radiculopathy, and cervical radiculopathy are medically determinable impairments. As established in subsections B and D [of Plaintiff's Memorandum], [the] ALJ had no valid basis to determine whether these impairments are medically determinable without such objective medical evidence.

(Id. at 15-16.)

---

[14] (...continued)
Appeals Council and conceding that "[i]t is true that [Plaintiff's] counsel at the hearing before ALJ Dowling had failed to inform him of additional medical treatment records no later than 5 business days before the November 2019 hearing").)

[15] Prior to issuance of the relevant version of the regulations, long-standing circuit precedent defined "material" as a reasonable possibility the new evidence would have changed the outcome of the case. See Meyer v. Astrue, 662 F.3d 700, 705 (4th Cir. 2011); Wilkins v. Secretary, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). However, Sections 404.970 and 416.1470 increase a claimant's burden from showing a reasonable possibility to a reasonable probability, and make the obligation to show a reasonable probability of a different outcome an additional requirement to showing materiality.

26

Defendant responds that "[t]hese records would not change the outcome of the decision" because "the ALJ was already aware of the EMG results and the diagnoses of cervical and lumbar radiculopathy, as Plaintiff's neurologist had interpreted them in the treatment notes." (Docket Entry 14 at 17 (citing, <u>inter alia</u>, Tr. 17-18, 22-23, 658).)   Defendant's position should prevail.   The Salem Neurological records that Plaintiff seeks to belatedly admit track earlier Salem Neurological records regarding Plaintiff's "bilateral carpal tunnel syndrome, lumbosacral radiculopathy, and cervical radiculopathy" (Docket Entry 12 at 15).   (<u>Compare</u> Tr. 34-43, <u>with</u> Tr. 651-52 ("Exhibit 18F"), <u>and</u> Tr. 655-58 ("Exhibit 19F").) Although Plaintiff maintains that the ALJ erred in so doing (<u>see</u> Docket Entry 12 at 7-9 (subsection B), 11-12 (subsection D)), the ALJ considered those earlier records in evaluating Plaintiff's symptoms and RFC (<u>see</u> Tr. 17 (citing "Exhibit 19F, p. 4"), Tr. 22-24 (citing, <u>inter alia</u>, "Exhibit 18F, p. 1"; "Exhibit 19F"; "Exhibit 19F, p.1"; "Exhibit 19F, p.3"; "Exhibit 19F, p.4")). Thus, Plaintiff has not shown a "reasonable probability" that consideration of the 2019 Salem Neurological records would change the outcome of the ALJ's decision.   The Appeals Council therefore did not err in its treatment of this material.

Accordingly, Plaintiff's second assignment of err warrants no relief.

### 3. RFC Assessment

In her final assignment of error, Plaintiff faults the ALJ for failing to (1) identify the precise range of light work that Plaintiff can undertake and (2) conduct a function-by-function analysis. (See Docket Entry 12 at 16-23; Docket Entry 15 at 8-12.)[16] In particular, Plaintiff asserts that the ALJ failed to assess her "ability to lift, carry, sit, stand, or walk." (Docket Entry 12 at 23.) Plaintiff further contends that the ALJ "never explained how he concluded, based on the evidence, that [Plaintiff] could actually perform the tasks required by light work. The ALJ therefore failed to build an accurate and logical bridge from the evidence he recounted to his conclusion about [Plaintiff's] RFC." (Id. (internal quotation marks omitted).)

The RFC measures the most a claimant can do despite any physical or mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms. See Hines, 453 F.3d at 562–63; 20 C.F.R. §§ 404.1545(b)-(d),

---

[16]    In connection with this contention, Plaintiff asserts that "20 C.F.R. §§ 404.1567(b) and 416.967(b) define multiple exertional ranges of light work. Each sentence of those regulations defines distinct categories." (Docket Entry 15 at 10.) Plaintiff provides no support for this novel contention (see Docket Entry 12 at 20-22; Docket Entry 15 at 10-12), and the regulations identify only the five overarching physical exertion work categories, without referencing any further subcategories of light work, see, e.g., 20 C.F.R. § 404.1567 ("To determine the physical exertion requirements of work in the national economy, [the SSA] classif[ies] jobs as sedentary, light, medium, heavy, and very heavy.").

28

416.945(b)-(d). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. §§ 404.1567, 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). Nevertheless, "the ALJ must both identify evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis, internal quotation marks, and brackets omitted). As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis[] . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *1 (July 2, 1996). "[The United States Court of Appeals for the Fourth Circuit] ha[s] explained that expressing the RFC before

29

analyzing the claimant's limitations function by function creates the danger that the adjudicator will overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do." Monroe v. Colvin, 826 F.3d 176, 187 (4th Cir. 2016) (internal quotation marks and brackets omitted).

Notably, the "[Fourth Circuit] ha[s] not adopted a rule of per se reversal for errors in expressing the RFC before analyzing the claimant's limitation function by function." Id. at 188; see also Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (explaining "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested" (internal quotation marks omitted)). Instead, "remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Monroe, 826 F.3d at 188 (internal quotation marks omitted).

As an initial matter, Plaintiff's RFC-related contentions depend heavily on her gloss regarding the ALJ's statement that Plaintiff possesses the RFC "to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)" (Tr. 20 (bold font omitted)). In particular, Plaintiff argues that "the ALJ explicitly stated in the RFC assessment that [Plaintiff] is capable of performing only 'a range of light work,' no [sic] the full

exertional range of light work." (Docket Entry 12 at 19-20 (emphasis added) (quoting Tr. 20).) Plaintiff also emphasizes that the ALJ "explicitly stated later in the hearing decision that . . . . 'additional limitations'" prevent Plaintiff from "'perform[ing] the full range of light work.'" (Id. at 20 (quoting Tr. 26).) According to Plaintiff, the ALJ failed to "identify what additional limitations prevent [Plaintiff] from performing the full range of light work." (Id.) Further, Plaintiff maintains, such limitations can only involve exertional considerations. (See, e.g., id. at 21 ("By explicitly finding [Plaintiff] incapable of performing the full range of light work, the ALJ established that she cannot perform all of the exertional requirements mentioned in 20 C.F.R. § 404.1567(b) and SSR 83-10.").)

Thus, Plaintiff contends, the nonexertional limitations that the ALJ specified in the RFC lack relevance to the ALJ's determination that Plaintiff could do "a range of light work" (Tr. 20 (bold font omitted)). (See, e.g., Docket Entry 15 at 8-9 (rejecting Defendant's assertion that ALJ "did identify the range of light work [Plaintiff] can perform because he provided 'specific functional limitations' . . . and he cited regulations that 'define light work'" on grounds that "the functional restrictions specified in the RFC assessment . . . are all nonexertional limitations that are unrelated to the strength demands of work").) In Plaintiff's view,

31

>    [the ALJ's] use of the phrase "a range of light work
>    as defined in 20 CFR 404.1567(b) and 416.967(b)" can only
>    mean an exertional range of light work because the cited
>    regulations define only exertional functions.    The
>    nonexertional restrictions of the RFC assessment are
>    therefore irrelevant to the exertional range of light
>    work [Plaintiff] is capable of performing.

(Docket Entry 15 at 9.)  Plaintiff's argument misses the mark.

To begin, contrary to Plaintiff's contentions, SSA regulations and rulings recognize that nonexertional limitations may circumscribe an individual's ability to engage in a particular exertional category.  See, e.g., 20 C.F.R. § 404.1567(b) ("If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity. . . ."); Social Security Ruling 96-9p, Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work — Implications of a Residual Functional Capacity for less than a Full Range of Sedentary Work, 1996 WL 374185, at *3-4 (July 2, 1996) (recognizing that "nonexertional" limitations can affect ability to perform sedentary work); see also, e.g., Basham v. Astrue, No. 2:06-cv-944, 2008 WL 3926437, at *4 (S.D. Ohio Aug. 25, 2008) ("[T]he [c]ourt notes that a non-exertional mental impairment may prevent a claimant from performing a full range of light work.").  Moreover, the record here reflects that the ALJ found only nonexertional limitations circumscribed Plaintiff's ability to do light work.

For instance, at the hearing, the ALJ provided the following description in his first hypothetical to the VE:

> Assume a person of [Plaintiff's] age, education, work experience, who is able to perform work at the light level, as, as defined by Social Security regulations. Additionally, the person can only occasionally climb ramps or stairs; can never climb ladders, ropes, or scaffolds; can frequently reach overhead bilaterally; must avoid concentrated exposure to extreme cold; must avoid concentrated exposure to excessive vibration; must avoid concentrated exposure to unprotected heights; must avoid concentrated exposure to hazardous machinery; would be limited to work with no production pace or production rate, meaning no work on a line or at a station where the worker cannot control the speed of the work; work in a low-stress job, defined as having only occasional decision making required and only occasional changes in the work setting.

(Tr. 80-81 (emphasis added); see also Tr. 82 ("Same limitations as hypothetical one. . . . [b]ut except at a sedentary level. Would there be work?").)   In his decision, the ALJ referenced this hypothetical when explaining the limitations that Plaintiff's impairments impose on her ability to engage in light work:

> If [Plaintiff] had the [RFC] to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21 and Rule 202.14. However, [Plaintiff's] ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.   To determine the extent to which these limitations erode the unskilled light occupational base, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and residual functional capacity.   The [VE] testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as the following:

> 1. Marker (DOT 209.587-034), which is considered light, unskilled (SVP 2) work. . . .

33

> 2. Bagger (DOT 920.687-018), which is considered
> light, unskilled (SVP 2) work. . . .

(Tr. 26 (emphasis added); see also Tr. 80-81 (identifying Marker
and Bagger as jobs person in hypothetical one can do).)

The ALJ reinforced this conclusion in his evaluation of the
State Agency Medical Consultants' opinions, to which he ascribed
"little weight." (Tr. 23.) The ALJ explained:

> The Consultants found no exertional limitations
> warranted, however this is not consistent with the
> evidence. Specifically, throughout the record,
> [Plaintiff] has reported both neck and shoulder pain
> (Exhibit 19F, p. 1; Exhibit 22F, p. 1, 5, 25-49).
> [Plaintiff's] diagnoses include cervical and lumbosacral
> radiculopathy (Exhibit 19F, p. 4). There has been mild
> to moderate distal, more than proximal, weakness in the
> upper and lower extremities. Sensory examinations have
> also noted reduced sensation to light touch, vibration,
> joint position sense, and pinprick in a stocking glove
> distribution (Exhibit 22F, p. 2-3, 6-7, 24-49).
> Additionally, [Plaintiff] has been diagnosed with
> fibromyalgia (Exhibit 19F, p. 1; Exhibit 21F, p. 3, 6;
> Exhibit 26F, p. 16). These findings support a reduction
> to light work, with the limitations described above [in
> the RFC]. The [ALJ] notes that any vocal restrictions
> are not supported. For instance, in early 2016
> [Plaintiff] had no obvious vocal fold weakness or
> abnormalities (Exhibit 8F, p. 2).

(Tr. 23 (emphasis added).)

The ALJ's summation paragraph in his RFC analysis likewise
reflects that only nonexertional limitations restrict Plaintiff's
capacity to engage in light work:

> In summary, although [Plaintiff] has severe impairments,
> they do not preclude [Plaintiff] from completing basic
> work related activities on a sustained basis. The above
> [RFC] assessment is supported by examination and
> evaluation reports, and [Plaintiff's] testimony and daily
> activities. While the [ALJ] assesses certain functional

34

> limitations, the [ALJ] does not find [Plaintiff's]
> testimony regarding the severity or frequency of
> [Plaintiff's] symptoms to be fully consistent with the
> evidence or supportive of <u>any greater limitations or
> restrictions than those the [ALJ] has included in the
> [RFC] set forth in th[e ALJ's] decision</u>.

(Tr. 25 (emphasis added).)

Thus, by finding that Plaintiff could engage in "a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)" without specifying any additional exertional limitations (Tr. 20 (bold font omitted)), the ALJ implicitly found that Plaintiff could "lift[] no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," Social Security Ruling 83-10, <u>Titles II and XVI: Determining Capability to Do Other Work — the Medical-Vocational Rules of Appendix 2</u>, 1983 WL 31251, at *5 (Jan. 1, 1983) ("SSR 83-10"), "stand[] or walk[], off and on, for a total of approximately 6 hours of an 8-hour workday," and sit "intermittently during the remaining time," <u>id.</u> at *6. <u>See, e.g.</u>, <u>Hines</u>, 453 F.3d at 563 ("The ALJ concluded that [the plaintiff] had the RFC 'to perform a wide range of sedentary work with limitations to working in temperature extremes, working at a production rate, or performing more than simple, routine, repetitive tasks.' In light of SSR 96-8p, this conclusion implicitly contained a finding that [the plaintiff] physically is able to work an eight hour day." (citation omitted)); <u>Harrison v. Colvin</u>, No. 1:10-cv-18, 2013 WL 1661096, at *2 (M.D.N.C. Apr. 17, 2013) ("[B]y finding that [the plaintiff] was capable of performing light work, the ALJ implicitly

35

found that she was capable of standing or walking for approximately six hours in an eight-hour work day."); Daniels v. Saul, No. 2:20-cv-230, 2021 WL 667945, at *7 (S.D. W. Va. Jan. 26, 2021) ("SSR 83-10 specifies that a 'full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday,' and '[s]itting may occur intermittently during the remaining time.' Thus, by finding that Claimant could perform light work without any additional standing, walking, or sitting limitations, the ALJ concluded that Claimant could stand and walk for approximately six hours in an eight-hour workday with intermittent sitting." (citation omitted) (brackets in original)), report and recommendation adopted, No. 2:20-cv-230, 2021 WL 665534 (S.D. W. Va. Feb. 19, 2021).

Plaintiff thus errs in asserting that "the ALJ failed to identify how much weight [Plaintiff] can lift and carry or how many hours per day she can sit, stand, or walk." (Docket Entry 12 at 17-18 (citing Tr. 20).) Moreover, contrary to Plaintiff's contentions (see, e.g., id. at 18, 21-23), the ALJ did explicitly evaluate Plaintiff's ability to walk (see Tr. 24) and also provided "an accurate and logical bridge" to his conclusion that Plaintiff can engage in light work subject only to nonexertional limitations. In this regard, the ALJ noted that Plaintiff asserted limitations in her ability to, inter alia, lift, stand, walk, sit, and use her hands. (Tr. 21.) The ALJ also recognized that Plaintiff "said

36

that she is unable to do much more than lie on her couch" and "reportedly needs to rest every 15 minutes." (Tr. 21.) The ALJ noted, however, that Plaintiff also "stated that she works as a medical biller 10 hours per week" and "work[ed] 30 hours per week" in 2018, and additionally "takes her daughter to school and to some events." (Tr. 21.) The ALJ further found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision." (Tr. 21.)

For example, as relevant here, the ALJ evaluated Plaintiff's reports of neck and shoulder pain. (See Tr. 22.) The ALJ explained that, although Plaintiff's "diagnoses include cervical and lumbosacral radiculopathy," she "has had normal movement of all her extremities" and her "motor examinations have been normal." (Tr. 22.) The ALJ additionally observed that, although Plaintiff suffered from certain weakness in her extremities and reduced sensation, "a nerve conduction study revealed only mild results" and Plaintiff "did not allege issues with personal care chores in her function report." (Tr. 22.) The ALJ continued:

> [Plaintiff] also noted hobbies and household chores that do not suggest any issues gripping, handling, or fingering (Exhibit 3E). Specifically, [Plaintiff] has reported cooking simple meals, handling laundry, sweeping, dishes, and dusting (Exhibit 3E). [Plaintiff's] gait has been unremarkable. Further, treatment, including medication, steroid injections, and trigger point injections, has reportedly offered relief

37

(Exhibit 22F, p. 9, 47). [Plaintiff] also worked
throughout 2018 (Hearing Testimony). In fact, she was
working 30 hours per week in 2018.

(Tr. 22.)

The ALJ explained that many of the same factors also compelled him to give "little weight to the opinion that [Plaintiff] is severely limited in her ability to walk and needs a disabled parking placard." (Tr. 24 (citing November 30, 2017, application for six-month temporary handicapped parking placard (see Tr. 659)[17]).) As discussed, these same factors contributed to the ALJ's decision to ascribe "limited weight" to the State Agency Medical Consultants' opinions that Plaintiff suffered from no exertional limitations (see, e.g., Tr. 23) and instead find appropriate "a reduction to light work, with the limitations described [in the RFC]." (Tr. 23.) The ALJ further stated that, despite beginning in late 2017 to more consistently complain of pain, Plaintiff's "examination findings were normal" and "she had a normal gait . . ., normal muscle tone, and she was without edema." (Tr. 22.) The ALJ also emphasized that, "[m]ost recently, [Plaintiff] said that her fibromyalgia related pain is doing better." (Tr. 23.)

In sum, "the ALJ sufficiently explained his conclusions when conducting the RFC assessment," Ladda v. Berryhill, 749 F. App'x 166, 172 (4th Cir. 2018), as he "addressed conflicting evidence in

---

[17] Notably, the completing physician, Dr. Runheim, specifically selected the "Temporary Disability Parking Placard," valid for a period of "1 to 6 months," rather than either the "Disability Parking Placard" or "Total and Permanent Disability Parking Placard," both valid for five-year periods. (Tr. 659.)

the record," id. at 173, and "used evidence from the record to explain his finding that [Plaintiff] was capable of light work," id. at 172, subject to nonexertional limitations.[18]  Accordingly, the Court should "uphold the ALJ's RFC assessment as supported by substantial evidence rather than remand."  Id. at 173.

### III. CONCLUSION

Plaintiff has established no grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment Reversing the Decision of the Commissioner of Social Security (Docket Entry 11) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that this case be dismissed with prejudice.

This 28th day of February, 2022.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

---

[18]  Plaintiff does not challenge the propriety of the ALJ's nonexertional limitations.  (See Docket Entries 12, 15.)